**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action 11 MD 2296 (RJS) |
| | ECF Case |
| THIS DOCUMENT RELATES TO: | |
| MARC S. KIRSCHNER, as Litigation Trustee for the TRIBUNE LITIGATION TRUST, *Plaintiff*, -against- DENNIS J. FITZSIMONS, *et al.*, *Defendants*. | No. 12 CV 2652 (RJS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**

Robert J. Lack
Jeffrey R. Wang
Christopher M. Colorado
7 Times Square
New York, NY 10036
Tel: (212) 833-1100
rlack@fklaw.com
jwang@fklaw.com
ccolorado@fklaw.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**

David M. Zensky, Esq.
William F. Mongan, Esq.
One Bryant Park
New York, NY 10036
Tel: (212) 872-1000
dzensky@akingump.com
wmongan@akingump.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

ARGUMENT ..................................................................................................................................6

**I.** THE TRUSTEE OWNS THE PRIVILEGE AND *RES JUDICATA* BARS RESPONDENTS FROM ATTEMPTING TO RELITIGATE THE ISSUE. ...........6

**II.** EVEN WITHOUT THE TRANSFER AGREEMENT AND THE CONFIRMATION ORDER, THE PRIVILEGES WOULD HAVE TRANSFERRED TO THE TRUSTEE ...............................................................10

CONCLUSION ..............................................................................................................................15

Pursuant to Federal Rule of Civil Procedure 37 and this Court's order for additional briefing [Dkt. 7201], Plaintiff Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust (the "Trustee") respectfully requests that the Court grant the Trustee's motion to compel the production of attorney-client communications between the former Tribune Special Committee and its outside counsel that are currently being withheld as privileged by the seven individuals (the "Independent Directors") that sat on the "Tribune Special Committee" from October 2006 through the completion of the LBO in December 2007 and its counsel during that period (collectively, "Respondents").  The Trustee owns the privilege and is entitled to the documents.

## PRELIMINARY STATEMENT

Tribune's confirmed Fourth Amended Plan of Reorganization (together with the documents and agreements incorporated therein, the "Plan"), and the final order of the Bankruptcy Court approving the Plan, assigned to the Trustee the "Debtors'" Privileges for the purpose of aiding the Trustee in his prosecution of the Preserved Causes of Action assigned to the Tribune Litigation Trust (the "Privilege Transfer").  Declaration of William F. Mongan ("Mongan Decl.") Ex. A (Agreement Respecting Transfer of Documents, Information and Privileges from Debtors and Reorganized Debtors (the "Transfer Agreement")), at § II.E.[1]  The Transfer Agreement explicitly defines the "Debtors" as including "the board of directors, or *any special committee of the board of directors*, of any of the Debtors."  *Id.* § I.A.8 (emphasis added). Respondents do not dispute that the Privilege Transfer lawfully transferred Tribune's corporate privileges; indeed, since Tribune exited bankruptcy, the reorganized Tribune itself and several law firms have already produced privileged documents to the Trustee without objection.  Rather,

---

[1] The Privilege Transfer extends from the prepetition period through October 27, 2010, and contains certain carve-outs not relevant to this motion.  The Transfer Agreement and the Confirmation Order left open the rights of all parties to litigate the question of what documents are or are not privileged, and whether any or all privileges have been waived, but not the Privilege Transfer itself.

Respondents contend that the Tribune Special Committee's privileges were separate and distinct from those of Tribune and the other Debtors, and that the Plan's assignment of privileges was ineffective as to documents and communications exchanged solely between the Special Committee and its counsel.

Respondents' position is legally unsupported. The Plan, including the associated Transfer Agreement, is binding on all of the parties in interest—including the *FitzSimons* defendants who sat on the former Special Committee. Unambiguously, the Plan transfers any relevant privilege to the Trustee in this matter. And even if there were some argument for why that should not be the case, the time for making such an argument has long since passed. But even if this Court were to reopen this issue and allow Respondents to argue about to whom the Special Committee's privilege from 2006-07 now belongs, as if there were no Transfer Agreement, it should still find that the Trustee is the rightful owner of any privilege. Under the law articulated by the Supreme Court, a trustee in bankruptcy owns the privileges formerly held by the board of a dissolved entity. That law, and the underlying policies, apply equally to a former special committee of any such board. Because these issues have already been determined by the Bankruptcy Court in this case and by the Supreme Court, this Court should compel the members of the Special Committee to produce the requested documents.

## FACTUAL BACKGROUND

The Special Committee was created in September 2006 for the purpose of "(i) overseeing the process of seeking, reviewing and evaluating Potential Transactions and (ii) if the Special Committee deems it appropriate, making a recommendation to the Board whether the terms of any Potential Transaction are in the best interests of stockholders of the Company and should be approved, if applicable, by the Board and/or by such stockholders." Mongan Decl. Ex. B (Oct.

2

18, 2006 Tribune Board Minutes).  The Special Committee retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as its counsel, and Tribune paid Skadden's fees.  *Id.*

The Special Committee met frequently during the last quarter of 2006 and first half of 2007, typically immediately following a meeting of the full Board.  Dennis FitzSimons and other senior Tribune officers (*i.e.*, the Non-Moving Defendants) typically attended the Special Committee meetings, along with Tribune's attorneys and financial advisors. *See* Mongan Decl. ¶ 4.  Ultimately, the Special Committee recommended that the full Board approve the LBO.  In December 2007, after Step Two of the LBO was completed, the Special Committee disbanded, and had no further role in respect of the LBO or Tribune's bankruptcy, which commenced less than one year later.  The members of the Special Committee were named as defendants in the *FitzSimons* action in 2010, and their motion to dismiss is pending before this Court.

Tribune remained in bankruptcy for four years.  In June 2012, Judge Carey conducted Plan confirmation hearings.  Under the Plan, senior unsecured noteholders and Tribune Retirees received a recovery of roughly 34 cents on each dollar of allowed claims and holders of the subordinated PHONES notes received nothing.  However, the Plan preserved valuable causes of action against, *inter alia,* the Debtors' prepetition directors, officers and advisors that were transferred to the Litigation Trust (the "Litigation Trust Assets").  The Trust was charged by the Plan with pursuit of such claims to seek additional recovery for Tribune's unpaid creditors:

> To effectively investigate, prosecute, compromise, and/or settle the Litigation Trust Assets on behalf of the Litigation Trust, the Litigation Trustee and its counsel and representatives may require reasonable access to the Debtors' and Reorganized Debtors' documents and information relating to the Litigation Trust Assets . . . .  Accordingly, on the Effective Date, the Reorganized Debtors and the Litigation Trustee shall enter into the [Transfer Agreement] providing for reasonable access to, at the Litigation Trust's own expense, copies of the Debtors' and Reorganized Debtors' records and information relating to the Litigation Trust Assets, including, without limitation, electronic records or documents.

Mongan Decl. Ex. C (Plan) § 13.3.8.

3

The Transfer Agreement was explicitly incorporated into the Plan, as confirmed. *Id.* §

1.1.169 ("Plan" includes "Exhibits and all supplements, appendices and schedules hereto, either

in their present" or future form.)  The Transfer Agreement was also expressly approved by the

Court in the Confirmation Order.  The latter states: "[t]he establishment of the Litigation Trust,

the transfer of the Litigation Trust Assets to the Litigation Trust, the appointment of the

Litigation Trustee and the Litigation Trust Advisory Board, the Litigation Trust Agreement, [and]

the form of the Debtors' Transfer Agreement . . . are hereby specifically approved."  Mongan

Decl. Ex. D (Confirmation Order) at 34.

The Transfer Agreement provides that (i) any privilege previously held by, *inter alia*, the

Special Committee now belongs to the Trustee; (ii) the Trustee has sole power to waive such

privileges; and (iii) the Trustee can serve document requests and subpoenas to obtain such

privileged information.  It defines "Debtors" as "[having] the meaning set forth in Section 1.1.54

of the Plan.  **For the avoidance of doubt**, 'Debtors' includes the board of directors, or **any**

**special committee of the board of directors**, of any of the Debtors."  Mongan Decl. Ex. A,

(Transfer Agreement) § I.A.8 (emphasis added).  The Transfer Agreement further provides that:

> Any Privilege or other protection from disclosure of the Debtors, the Debtors' Estates,
> and/or the Reorganized Debtors that applies to any Privileged Documents Relating to the
> Claims or Privileged Information relating to the Claims, whether in the possession of the
> Debtors, the Debtors' Estates, the Reorganized Debtors, or any other Person, is **hereby**
> **transferred, assigned, given over to, and shall vest exclusively in, the Litigation**
> **Trustee, and the Litigation Trustee shall have the exclusive authority and sole**
> **discretion to waive any such privilege or immunity**.  The Litigation Trustee is
> expressly authorized to formally or informally request or subpoena Privileged Documents
> Relating to the Claims or Privileged Information relating to the Claims **from any**
> **Persons other than the Reorganized Debtors, including attorneys,** professionals,
> consultants, and experts.

*Id.* § II.E. (emphasis added).

The terms of the Transfer Agreement were litigated, highlighted before the Bankruptcy

Court, negotiated, and explicitly addressed in the Confirmation Order.  On June 1, 2012, certain

4

directors and officers, including the Independent Directors, filed an objection to an earlier

version of the Transfer Agreement.  *See* Mongan Decl. Ex. E (Certain Directors' and Officers'

Reply to the Objection of Aurelius Capital Management, LP to Confirmation of the Fourth

Amended Joint Plan of Reorganization (the "D&O Objection")).  The D&O Objection was

signed on behalf of the Independent Directors by Skadden.  *Id.* at 6.  The D&O Objection argued,

among other things, that "[i]ssues of what is privileged, who holds the privilege, and whether any

privilege has been waived should be left to [the *FitzSimons* court] to resolve . . . ."  *Id.* at 4.

      At the confirmation hearing, the Bankruptcy Court and the parties discussed the Transfer

Agreement and the D&O Objection at length.[2]  Debtors' counsel underscored the purpose of the

Agreement:  "What we want to make clear here is that, with respect to this universe of

documents that's the subject of this agreement, that the person controlling that privilege is now

going to be the Litigation Trustee . . . ."  Mongan Decl. Ex. F (June 8, 2012 Hearing Tr.) at

49:22-50:1.  The undersigned counsel, acting as counsel for certain creditors, similarly

highlighted the Transfer Agreement's effect:  "[W]hat it does do, with the Court's blessing, is

ensure that the privileges to certain documents and issues that belong to the debtors, the debtors'

estates, do lawfully transfer to the Litigation Trustee consistent with established law . . . ."  *Id.* at

52:2-5.  Counsel for certain directors and officers registered a "fundamental concern" with the

terms, but noted that they would continue to negotiate to have the issue resolved.  *Id.* at 64:4-6.

The Bankruptcy Court noted that it considered the Transfer Agreement "an entirely appropriate

mechanism to deal with the transfer."  *Id.* at 67:18-19.

      Shortly after the hearing, the Transfer Agreement was amended, and clean and redlined

versions were filed on the docket.  Mongan Decl. Ex. A (Transfer Agreement) and G (Bankr. Dkt.

---

[2] Notably, Skadden represented the former Special Committee at the confirmation
hearing.  Mongan Decl. Ex. F (June 8, 2012 Hearing Tr.) at 11.

No. 11836-9).  As revised, the Transfer Agreement updated the definition of "Debtors" to

expressly include the Special Committee.  The Bankruptcy Court considered that language in

connection with Plan Confirmation, and approved the revised Transfer Agreement in the

Confirmation Order, entered July 23, 2012.  That Order also overruled the D&O Objection's

attempt to preclude the Privilege Transfer or leave open any question of the efficacy of the

transfer.  Mongan Decl. Ex. D (Confirmation Order) at 36, 40-42.

## ARGUMENT

## I.    THE TRUSTEE OWNS THE PRIVILEGE AND *RES JUDICATA* BARS RESPONDENTS FROM ATTEMPTING TO RELITIGATE THE ISSUE.

When "a court order's plain terms unambiguously apply . . . they are entitled to their

effect."  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009).  Here, the Confirmation Order

unambiguously "APPROVED AND CONFIRMED in each and every respect" the Plan and "the

documents and agreements related thereto" including "the Debtors' Transfer Agreement," whose

"form … [was] hereby specifically approved."  Mongan Decl. Ex. D (Confirmation Order) §§

I.A., VI.A.  That Agreement defines "Debtors" to include any special committee of the Board

(*i.e.*, the Independent Directors) and transfers to the Trustee the defined privileges, including

privileges formerly held by such a committee.  Mongan Decl. Ex. A (Transfer Agreement) §§

I.A.8; I.B; II.E.  *Res ipsa loquitur*.

Moreover, the Confirmation Order considered and rejected the D&O Objection insofar as

it sought to block the transfer of privileges to the Trustee.  Mongan Decl. Ex. D (Confirmation

Order) at 36, 41.  Specifically, the Confirmation Order stated that the objecting directors and

officers—including the Independent Directors—agreed that "they will not argue that the

respective privileges and protections [transferred in the Transfer Agreement] have not lawfully

been transferred to the Litigation Trustee," and determined that such transfer to the Trustee,

6

including the right to waive the privilege, would in fact affect the rights of the defendants in this case to that extent. *Id.* at 41 (stating that Transfer Agreement will not affect the rights of defendants in the FitzSimons action "except as provided in items (1) and (2) [above]").

Under 11 U.S.C. § 1141, a confirmation order has a res judicata effect concerning issues and claims arising thereunder. "Res judicata principles apply to confirmed plans to bar the relitigation of issues that were or could have been raised in the confirmation proceedings," in order to "provide[] finality to a confirmed plan." *In re 401 E. 89th St. Owners, Inc.*, 223 B.R. 75, 79 (Bankr. S.D.N.Y. 1998) (collecting cases). Such an order bars relitigation of any issues that could have been raised in plan confirmation proceedings. *See In re PWS Holding Corp.*, 303 F.3d 308, 315 (3d Cir. 2002) (prospective fraudulent transfer plaintiff had had an opportunity to object to extinguishment of such claims in plan, but District Court overruled those objections in its Confirmation Order, to which plaintiff did not appeal—precluding plaintiff from pursuing such claims in state court); *Eubanks v. FDIC*, 977 F.2d 166, 172-73 (5th Cir. 1992) (res judicata effect of confirmed plan precluded debtors from bringing suit against banks on claim that should have been raised as a defense or counterclaim to banks' unobjected-to proof of claim).

Respondents already objected outright to the Transfer Agreement, and had the opportunity to—but did not—object to the inclusion of the special committee in the definition of "Debtors." Respondents took part in the bankruptcy proceedings as parties-in-interest, going so far as to file the D&O Objection and attend the hearing to discuss the Transfer Agreement. Following that hearing, Transfer Agreement section II.E.4 was added to address certain of the arguments made in the D&O Objection. The definition of "Debtors" in the Transfer Agreement was also expanded to ensure that the applicable privileges of the Special Committee would be transferred. The Respondents—who were on notice of both of these changes via a revised

7

version of the Transfer Agreement filed on June 19, 2012 in connection with the Plan—did not

object further, notwithstanding that each of them was a defendant in the already-pending

*FitzSimons* action.  To the extent that the Respondents disagreed with this aspect of the Transfer

Agreement or the Confirmation Order entered by Judge Carey on July 23, 2012, the proper

avenue was to appeal to the District Court, which they did not do.  The scope and enforceability

of the Privilege Transfer have been decided, and may not be relitigated.

The Respondents' arguments otherwise are incorrect.  First, as noted above, the Transfer

Agreement *was* a part of the Plan, was approved in its entirety in the Confirmation Order, and

explicitly settled the issue currently before this Court.  The Respondents' reliance on *In re*

*Maxwell Commc'n Corp.* is out of place, as it rightly rejected a claim that the plan of

reorganization at issue was res judicata on an issue *the Plan did not address*, in a circumstance in

which the party arguing *res judicata* had taken an inconsistent position at the confirmation

hearing.  93 F.3d 1036, 1044-45 (2d Cir. 1996).  While the Transfer Agreement and Confirmation

Order here did reserve the Respondents' right to dispute whether any *individual* document is

protected by an applicable privilege or whether Tribune and/or the Debtors waived any such

privilege as to any *individual* document, those matters are not at issue here.  Contrary to the

Respondents' suggestion, (Mongan Decl. Ex. H (Joint Letter) at 5 n.10), the Transfer Agreement

is more than a "signed contract."  It is part of the Plan, which binds many non-signatories,

including the Respondents. Mongan Decl. Ex. D (Confirmation Order) § I.A.  To the extent the

Respondents desired to object to an aspect of the Plan or the Transfer Agreement incorporated

therein, they had an opportunity to do so during the Plan confirmation process.

Respondents' argument that the Plan is somehow inconsistent with the Transfer

Agreement fares no better.  The allegedly narrower definition of "Debtors" in the Plan itself does

not control the more expansive definition of that term in the Transfer Agreement, nor was the alleged former "Special Committee privilege" transferred to the Reorganized Debtors at the conclusion of the bankruptcy instead of the Trustee.  By the Plan's express terms, Section 5.2—which provides for the execution and performance of the Transfer Agreement—takes priority over Section 5.7 —which addresses what assets vest in the Reorganized Debtors.  Mongan Decl. Ex. C §5.7.  Read together, these provisions make clear that the definition of "Debtors" set forth in the Transfer Agreement controls the meaning and operation of the Transfer Agreement.  There is also no basis to assert that the different definition of "Debtors" was intended by the parties or the Bankruptcy Court to leave open ownership of the former special committee privilege for future litigation in front of another judge, particularly given the explicit approval of the Transfer Agreement in the Confirmation Order as written.  There is simply no inconsistency.

Further, there is a rational basis for ensuring that any "special committee" be deemed part of the "Debtors" for purposes of the Transfer Agreement, as opposed to the operative sections of the Plan itself.  Certain Plan provisions are forward-looking and require the Debtors' involvement (*see*, *e.g*., § 5.3.2), and incorporating the Special Committee would be meaningless as to such sections.  And even if some inconsistency did exist on this point—and one does not—it was known to Respondents in 2012, a month before the Confirmation Order was entered and the Transfer Agreement approved, and therefore should have been raised then with Judge Carey.

Finally, as defined in the Transfer Agreement, the privilege transfer applies to "Documents Relating to the Claims," itself a defined term that includes "[d]ocuments which relate in full or in part to Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to [them]."  Mongan Decl. Ex. A  § I.A.13; I.A.23.  Again, this

corroborates that the Transfer Agreement was intended to, and did in fact, transfer any privileges of the Debtors (including the former Special Committee) to the Trustee.

## II.   EVEN WITHOUT THE TRANSFER AGREEMENT AND THE CONFIRMATION ORDER, THE PRIVILEGES WOULD HAVE TRANSFERRED TO THE TRUSTEE.

The decision to transfer to the Trustee the Debtors' privileges as defined in the Transfer Agreement was legally sound.  Indeed, even absent the Transfer Agreement and Confirmation Order, the Trustee would still control the attorney-client privilege in connection with pre-bankruptcy communications involving Respondents.  Upon the commencement of a bankruptcy case, the corporation's attorney-client privilege with respect to pre-bankruptcy communications is controlled not by the corporation's directors, but instead by the bankruptcy trustee, who is "directed to investigate the debtor's financial affairs" and "empowered to sue officers, directors, and other insiders…" *CFTC v. Weintraub*, 471 U.S. 343, 352 (1985); *see also Rahl v. Bande (In re Flag Telecom Holdings, Ltd.)*, 2009 WL 5245734, at *9 (S.D.N.Y. Jan. 14, 2009) (holding that notwithstanding the existence of a reorganized debtor, "the entity designated by [the debtor] in the Reorganization Plan with the responsibility of prosecuting officers and directors should control the ability to assert and waive the attorney-client privilege for communications related to those causes of action").

Respondents' position, that the privilege attendant to communications between the Special Committee and counsel between 2006 and 2007 was not or could not be transferred to the Trustee at the conclusion of the Tribune bankruptcy, is completely antithetical to the reasoning articulated by the United States Supreme Court in *Weintraub*, and the purpose of any privileges that may have belonged to the Special Committee to begin with.  As the Supreme Court held, allowing directors to control the privilege "would frustrate an important goal of the bankruptcy laws," given that "[i]n seeking to maximize the value of the estate, the trustee must

10

investigate the conduct of prior management to uncover and assert causes of action against the

debtor's officers and directors." *Weintraub*, 471 U.S. at 353.  Further, if a bankruptcy trustee did

not control a debtor's attorney-client privilege with respect to pre-bankruptcy communications,

"management . . . could use the privilege as a shield against the trustee's efforts to identify

[wrongfully diverted or appropriated corporate] assets." *Id.*[3]

This Court recently ruled that the same considerations identified by the Supreme Court in

*Weintraub* compel the conclusion that a bankruptcy trustee also controls the attorney-client

privilege of a special committee of the debtor's former board of directors.  *In re China Medical*

*Technologies, Inc*., 539 B.R. 643 (S.D.N.Y. 2015).  In *China Medical*, Judge Abrams, applying

United States law,  directed that the Paul Weiss firm turn over to the Foreign Representative of a

debtor in a Chapter 15 case privileged documents relating to an investigation Paul Weiss had

conducted for the debtors' former audit committee.  *Id.* at 653. The Court noted that while the

audit committee of the board of the insolvent corporation "was 'independent' in some sense" in

that "[i]t could retain counsel, and it legitimately expected that its communications with counsel

would be protected against intrusion by management," it was "not an individual," but was only a

subpart of the board of directors and *"*thus a critical component of [the company's] management

infrastructure." *Id*. at 655.  Further, because the audit committee did not continue to exist in

bankruptcy, the court found no relevant distinction between the independent committee and the

full board.  *Id.*[4]

---

[3] In *Weintraub*, the Supreme Court also reasoned that Corporate officers and directors risk the waiver of corporate privilege covering their communications with counsel outside of bankruptcy, when a corporation is sold or new directors or officers take over through normal succession.  471 U.S. at 357.  Hence, there is no greater potential for a "chilling effect" in decreeing that prepetition corporate privileges transfer to the trustee.  *Id.*

[4] The Respondents rely heavily on *In re BCE West, L.P*., 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000), despite that the *China Medical* court considered, and rejected, *BCE West* and, in

Here, as in *Weintraub* and *China Medical*, attorneys retained by the Special Committee were counsel to a committee of the board and not to any directors as individuals; the Special Committee was a component of Tribune's governance infrastructure and was responsible for actions by Tribune; and, Tribune, not the individual directors, paid Skadden's fees.  Also like in *China Medical*, the Special Committee disbanded and any distinction between it and Tribune (or, for that matter, the Litigation Trust) has long since dissolved.  Respondents offer no basis—other than contentions squarely rejected by the Supreme Court in *Weintraub* and in *China Medical* (*e.g.*, claimed expectation of confidentiality, chilling effect)—for why, years after the Special Committee dissolved and Tribune filed and then exited bankruptcy, any privilege should reside with the directors as individuals, rather than with the Trustee pursuing claims for conduct that was wrongful vis-à-vis Tribune, and to whom the privilege was transferred in an agreement confirmed by the Bankruptcy Court.[5]

Respondents attempt to distinguish *China Medical* by claiming that "the Court has yet to determine that the Trustee's claims are even viable."  Mongan Decl. Ex. H (Joint Letter) 4 n.8. However, nothing in the Transfer Agreement, *Weintraub*, *China Medical* or common sense suggests that a "viability" test applies to the question of whether the Trustee now owns the privilege respecting a Tribune committee disbanded ten years ago.   In any event, the Non-Moving Defendants—as to whom the discovery sought is most relevant at this juncture—have not challenged the viability of the Trustee's claims by moving to dismiss, and this Court has authorized discovery concerning those claims.  *See Browning Debenture Holders' Comm. v.*

doing so, noted that *BCE West* did not address the considerations found to be dispositive by the Supreme Court in *Weintraub*.  *China Medical*, 539 B.R. at 655.

[5] As the court found in *China Medical*, "once any miscreants have left the company . . . management is deposed in favor of the trustee, and there is no longer a need to insulate committee-counsel communications from managerial intrusion . . . assertions as to a potential chilling effect ring hollow." 539 B.R. at 656.

*DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977) (noting that "[i]f appellants' claims were completely without color, [defendant] could easily have protected itself with an early motion to dismiss"); *Sciame Dev., Inc. v. Kumho Inv. Bank,* 2012 WL 5929035, at *7 (N.Y. Sup. Ct. Nov. 13, 2012) (holding that where defendants did not move to dismiss a count, said count remained "a viable claim").

    Contrary to Respondents' assertion, the Trustee's claims against the Non-Moving Defendants are viable and colorable and the subpoena seeks information that could be relevant and admissible against them. *Id.*[6] That the documents sought by the Trustee might also be relevant to claims against other defendants who have filed motions to dismiss claims against them is irrelevant to whether the Trustee owns the applicable privilege and is entitled to seek and obtain documents now that might be covered by that privilege. The circumstances here fall squarely within the reasoning of the courts in both *Weintraub* and *China Medical*.[7]

    Delaware law does not compel a different result. Delaware courts have not addressed whether a bankruptcy trustee automatically inherits, or may inherit pursuant to an express assignment, a privilege between a pre-petition board committee and its legal counsel. To the extent Delaware courts have addressed privileges that exist between a special committee and its counsel, those courts have focused on whether the committee has a privilege *outside of the*

---

[6] *See* Mongan Decl. Ex. I (Trustee's Subpoena to Skadden, Document Request No. 1 ("All Documents Concerning any Communications between You and the Special Committee that expressly or impliedly (a) reflect, refer to or depend on information received from or statements made by any of the Non-Moving Defendants or (b) reflect, refer to or depend on questions that were or were going to be posed by the Special Committee to any of the Non-Moving Defendants.")). The Non-Moving Defendants did not move to quash the Trustee's subpoenas to Skadden and/or the Independent Directors.

[7] *China Medical* notes that Federal Rule of Evidence 501 allows for state law to govern privilege questions for state claims. 539 B.R. at 651. Here, where both federal and state claims are implicated, and where the Respondents argue that the Special Committee held the privilege in the bankruptcy proceeding such that it was not transferred via the Plan, *China Medical* is on point.

*bankruptcy context* that it can assert against *third parties*.[8]  *See, e.g.*, *Kalisman v. Friedman*, 2013 WL 1668205, at *5 (Del. Ch. Apr. 17, 2013) (in discussing the limitations on a director's ability to access privileged material, "a committee can withhold privileged information once sufficient adversity exists between the director and the corporation such that the director could no longer have a reasonable expectation that he was a client of the board's counsel"); *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1058-59 (Del. Ch. 2004) (acknowledging that where a special committee investigated the company's chairman, the company could refuse to waive the committee's attorney-client privilege in a subsequent lawsuit between the chairman and the company after the chairman was no longer with the company); *see also SBC Interactive Inc. v. Corp. Media Partner*, 1997 WL 770715, at *6 (Del. Ch. Dec. 9, 1997) (denying a motion to compel where movant sought privileged information divulged after movant was no longer with the partnership).

The Trustee's motion presents an issue that is distinct from the facts before those Delaware courts, and whether the Tribune Special Committee had a privilege that could be asserted against third parties in 2007 is not at issue here.  *See Flag Telecom*, 2009 WL 5245734, at *9 ("A lawsuit wherein a company defends against an outside party . . . is fundamentally different from a lawsuit by a company against its own insiders, such as officers or directors."). The Trustee is not an outsider attempting to invade the privilege between a third party and its counsel.  Rather, the Trustee is asserting the rights of Tribune, which had a commonality of

---

[8] In another case, the Delaware Chancery court analyzed a director's motion to compel where the director, who was excluded from discussions of legal advice regarding a repurchase the company undertook, sought to compel discovery of certain legal advice given to the board of directors.  *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, 1996 WL 307444 (Del. Ch. June 4, 1996).  While the court in *Moore* noted that a board could have appointed a special committee which "would have been free to retain separate legal counsel, and its communications with that counsel would have been properly protected from disclosure to [the company's largest shareholder] and its director designee," it did not hold that (or even analyze whether) those communications would be privileged as against the company itself.  *Id.* at *6.

14

interest with the Independent Directors during the period for which the Trustee now seeks the production of documents, and the Trustee is entitled to these documents, even if they are covered by a privilege as between a committee of the Board of Tribune and its counsel.

Here, as in *China Medical*, "the prebankruptcy interests of [the Committee were] aligned with the interests of a trustee or liquidator in bankruptcy." 539 B.R. at 657; *see also In re Suprema Specialties, Inc.*, 2007 WL 1964852, at *1, *4 (S.D.N.Y. July 2, 2007) (corporate debtor's trustee controlled the attorney-client and work product privilege as to a report prepared by separate outside counsel to the pre-petition board's audit committee); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc*., 244 F.R.D. 412, 427 (N.D. Ill. 2006) (noting company was also counsel's client when counsel was retained for the company's audit committee).

## CONCLUSION

It is well settled that any privilege of a board of an insolvent company, or of a committee of such a board, is held by the company (or a trustee standing in its place) after the company files for bankruptcy and the board and committee have dissolved. This was made clear by *Weintraub* and again in *China Medical*. This result is further corroborated here by the Transfer Agreement which—common law ownership of the privilege aside—expressly transferred that privilege to the Trustee pursuant to an agreement that was approved by the Bankruptcy Court as part of Plan confirmation, over objection of certain stakeholders in that proceeding, and the Respondents' attempt to challenge that agreement and approval is barred by the doctrine of res judicata.[9]

For the foregoing reasons, Plaintiff respectfully requests that the Court direct the Respondents to produce the documents currently withheld as privileged.

---

[9] The Trustee has not yet determined whether it will waive any privileges in connection with this litigation (as he is expressly empowered to), but expects to make this determination shortly after completing discovery of privileged materials.

Dated: December 15, 2017
        New York, New York

                                        Respectfully submitted,


**FRIEDMAN KAPLAN SEILER &**              **AKIN GUMP STRAUSS HAUER & FELD**
**ADELMAN LLP**                           **LLP**

By:    /S/ Robert J. Lack                 By:    /S/ David M. Zensky
       Robert J. Lack                            David M. Zensky
       Jeffrey R. Wang                           William F. Mongan
       Christopher M. Colorado